(No. 35396.— )

BULK PETROLEUM CORPORATION, Appellee, *vs.* THE CITY of Chicago, Appellant.

*Opinion filed January 22, 1960.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, and EDWARD E. PLUSDRAK, Assistant Corporation Counsel, of counsel,) for appellant.

HOFFMAN & DAVIS, of Chicago, (SOL A. HOFFMAN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A declaratory judgment entered by the circuit court of Cook County determined that certain ordinances of the city of Chicago relating to the storage of flammable liquids were invalid as applied to the property of the plaintiff, Bulk Petroleum Corporation, and the city has appealed directly to this court.

The ordinances that were held invalid are section 127—5 of the Municipal Code of Chicago, which provides in part:

"No tank, container, pipe or other equipment for the storage and handling of flammable liquids shall be installed within 200 feet of the nearest boundary of any lot or plot of ground used for a school, hospital, church or theatre," and section 40—8, which provides in part: "No such tank shall be installed in any lot or plot of ground where any of the boundaries of such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot of ground used for a school, hospital, church or theatre." Each of these sections contains frontage consent requirements which were also held invalid. (Cf. *Drovers Trust & Savings Bank* v. *City of Chicago, post,* 476.) As we view this case, however, it is not necessary to set forth or to consider the provisions that relate to frontage consents.

The plaintiff purchased the property at the northeast corner of West Diversey Parkway and North Halsted Street in Chicago, upon which it proposed to erect a filling station. A filling station is a permitted use at that location under the city's zoning ordinances, but the property that plaintiff purchased is located less than 200 feet from Pinel Sanitarium, which is a hospital for the care and treatment of mental patients. The plaintiff's application for a building permit was therefore denied.

The record shows that although most of plaintiff's property is within 200 feet of the hospital the northwest corner of it is more than 200 feet away, and that plaintiff proposed to install three 6000 gallon underground gasoline storage tanks in that corner. It proposed also to connect these tanks with five "pump islands" all of which would be located within 200 feet of the hospital, the nearest ones being approximately 100 feet away. Other evidence concerned the commercial and apartment house uses of the property in the vicinity, the volume of traffic on Diversey Parkway and on Halstead Street, and the presence of three gasoline filling stations within two blocks of plaintiff's

property. Expert testimony was received as to the value of the plaintiff's property for filling station purposes and for other purposes, as well as testimony concerning the effect of the proposed filling station upon the value of other property in the vicinity.

From this summary of the evidence it is apparent that the case was tried as if it involved the validity of a zoning ordinance. But the use in question is permitted under the city's zoning ordinance. What is involved in this case is an added requirement imposed by the separate ordinances which govern the location of tanks, containers, pipes or other equipment for the storage and handling of flammable liquids. The objective of these ordinances, and the means chosen to effect that objective, bear only a remote relationship to the considerations that underlie a zoning ordinance. Consequently, if we assume the doubtful premise that such ordinances, like zoning ordinances, may be held unconstitutional as applied to particular pieces of property, the proof required to show invalidity will be different from that accepted in zoning cases.

The authority of the city to enact ordinances of the kind in question is established. (Ill. Rev. Stat. 1959, chap. 24, pars. 23—75, 23—87; *City of Ottawa v. Brown,* 372 Ill. 468; *Fligelman v. City of Chicago,* 348 Ill. 294; *Jennings v. Calumet National Bank,* 348 Ill. 108; *People ex rel. Busching v. Ericsson,* 263 Ill. 368; cf. *Pierce Oil Corp. v. City of Hope,* 248 U.S. 498, 63 L. ed. 381.) Such ordinances are designed to guard against loss of life from fires that result from the storage and handling of highly inflammable substances. To that end the ordinances here involved require special protection for places where people are apt to be congregated under circumstances that might be thought likely to impair their chances of escape from a flash fire. To attack the validity of this ordinance as applied to his property, the plaintiff must show that the

purpose served by the ordinance is improper or that the means selected are not reasonably suited to effectuate this purpose.

Upon the trial no evidence was offered that challenged the propriety of the municipal objective or the reasonableness of the requirement of intervening space. Such evidence as bore directly upon the validity of the ordinance was offered by the city. It showed that there are approximately 2,500 filling stations in Chicago, that there were 97 fires at filling stations during 1957, and that on 200 occasions during that year the Chicago Fire Department found that gasoline from leaky filling station tanks had seeped into sewer lines. This evidence certainly did not suggest the invalidity of the ordinances. That no explosion resulted, or that there was no loss of life from filling station fires in 1957 is not of significance, for the purpose is preventive, not remedial. The plaintiff urges that the "potentiality of danger from the storage of gasoline is not limited to hospitals but affects all property." It does not follow, however, that the legislative body is precluded from an attempt to reduce that potentiality of danger with respect to places where the hazard to life is thought to be particularly great.

The plaintiff has failed to establish the invalidity of the applicable ordinances, and the judgment of the circuit court must therefore be reversed.

*Judgment reversed.*