(No. 36206.—

CARL VENDLEY *et al.*, Appellants, *vs.* THE VILLAGE OF BERKELEY, Appellee.

*Opinion filed March 29, 1961.*

LYLE H. ROSSITER, of Chicago, for appellants

JOSEPH P. McGAH, of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal prosecuted by the plaintiffs, Chicago Title & Trust Co., as trustee, Carl Vendley, and Phillips Petroleum Company, being the owner, trust beneficiary, and lessee, respectively, of five city lots located in the village of Berkeley, to review a declaratory judgment entered in the circuit court of Cook County upholding the validity of an ordinance of the village of Berkeley, defendant, which forbids the installation of equipment for the storage of flammable liquids within 300 feet of property used for a school, hospital, church, or theater. The trial court has certified that a municipal ordinance is involved and that the public interest justifies a direct appeal.

Plaintiffs' property is situated at the southeast corner of the intersection of St. Charles Road, a four-lane highway carrying east and west bound traffic, and Wolf Road, a north-south thoroughfare, and is presently being used for a real-estate office. An elementary public school with an enrollment of approximately six hundred students is located at the northwest corner of the same intersection, a Cities Service oil station is at the southwest corner, and the northeast corner is vacant. To the east of plaintiffs' lots and fronting upon the south side of St. Charles Road

are a liquor store, a garage sales business, a food shop, restaurant, and a retail store. Extending westerly from the Cities Service station on the south side of St. Charles Road are two apartment houses, three residences, a grocery supermarket, and a retail business. A plumbing shop adjoins the school property on the west and commencing 1½ blocks further west are other gas stations, stores, and professional offices.

The original school building was constructed some forty years ago but was not used from 1930 until after World War II when the facilities were subsequently expanded to accommodate the present enrollment. The Cities Service station was erected in 1954, and on November 24, 1955, the village of Berkeley adopted the questioned ordinance which provides as follows: "No tanks, container, pipe or other equipment for the storage and handling of flammable liquids shall be installed within three hundred feet (300) of the nearest boundary of any lot or plot of ground used for a school, hospital, church or theater." Nevertheless, plans were thereafter formulated by plaintiffs to construct on their property a gasoline service station having two pumps, to be located 187 feet and 195 feet, respectively, from the school property, and underground storage tanks situated some 213 feet from the school tract. Although the lots were zoned for such use, the plans did not comply with the location ordinance and for that reason the application for a building permit was denied by the defendant. The present declaratory judgment action followed.

Plaintiffs contend that since the ordinance prohibits the installation, and not the maintenance, of gasoline equipment it in effect applies only to those stations which are constructed after the date of its passage and not to those already in existence, thus creating an unreasonable classification so as to constitute a denial of the equal protection of the law and a violation of section 2 of article II of our constitution. They also insist that the location requirement

has no relationship to the protection of public health, safety, and welfare, and is therefore an unauthorized exercise of the police power.

It is generally held that consideration for existing property rights furnishes a legitimate basis for classification in legislation of a regulatory nature, (12 Am. Jur., Constitutional Law, sec. 486, pp. 164-165; 101 C.J.S., Zoning, sec. 63, pp. 794 and 938,) and this principle has long been recognized in our zoning statute (Ill. Rev. Stat. 1959, chap. 24, par. 73—1) and in cases dealing with ordinances restricting the use of private property. (*City of Chicago* v. *Ripley*, 249 Ill. 466; *King* v. *Davenport*, 98 Ill. 305.) As we stated in *City of Aurora* v. *Burns*, 319 Ill. 84, at 96, where the constitutionality of a nonconforming use was upheld: "To exempt buildings already devoted to a particular use from a prohibition against such use of buildings thereafter erected in a specified area is not an unlawful discrimination. Such a classification has a sound basis and is reasonable." Furthermore, in *Schwartz* v. *City of Chicago*, 19 Ill.2d 62, which involved the validity of an ordinance almost identical with the one at hand, we recognized the theory of nonconforming use in matters of this kind.

Because of the inherent danger to life and property, municipalities have by legislative enactment been granted the power to regulate the storage of gasoline and other petroleum products. (Ill. Rev. Stat. 1959, chap. 24, par. 23—75.) And where related to public health, safety, or welfare, we have consistently upheld ordinances requiring installations for the storage of flammable liquids to be located at designated distances from areas where large numbers of persons are likely to congregate. (*Schwartz* v. *City of Chicago*, 19 Ill.2d 62; *Chicago Title & Trust Co.* v. *Village of Lombard*, 19 Ill.2d 98; *Bulk Petroleum Corp.* v. *City of Chicago*, 18 Ill.2d 383.) Thus if the present ordinance relates to the public health, safety or welfare, its validity must be sustained.

On hearing of this cause, John McFarland, chief deputy fire marshal for Illinois, testified that State regulations prohibit the installation of gasoline storage tanks within 85 feet of any school house, church, or other public building and within 300 feet of any mine. He also stated that although fires do upon occasions occur above ground at service stations, he knew of no instance in which a fire developed in an underground storage tank or spread from a station to an adjoining church or school.

John A. Ainlay, an official of the American Petroleum Institute, said that gasoline cannot be ignited in an underground storage tank, that a fire above ground cannot travel down the gasoline hose to the storage tank, and that if the vapor at the service pump was to become ignited it could be extinguished by either covering the hose nozzle or turning off the gasoline supply. According to this witness, neither the National Fire Association nor the National Board of Fire Underwriters require tanks to be located away from congested areas and, in 1958, of 69,028 service stations surveyed, only 423 reported any fires and only four of these spread to adjoining property. He did admit, however, that an explosion of an above-ground bulk storage tank had recently occurred in Kansas City because of substandard protective devices, and that a fire may result from a leak in an underground storage tank.

Defendant's expert witness, Willis G. Labes, a professor of fire-protection engineering, agreed that gasoline cannot explode in an underground storage tank but testified it could become ignited during the filling and removal operations. It is possible, according to his testimony, for gasoline to leak from underground tanks and filter through the earth for a considerable distance before igniting. In one case the gasoline saturated a foundation wall some 20 feet away; at another time an explosion occurred about 60 feet from the leaking storage tanks; and in another instance related by this witness a fire and explosion occurred more than

80 feet from the tank. In his opinion, the storage of flammable liquids within 300 feet of a church, school, or place of public assembly, even in underground tanks, could be hazardous.

When the evidence of the present case is appraised in light of the principles expressed in past decisions which have considered similar ordinances, we are of the opinion that the present ordinance is reasonably calculated to protect the public safety, health and welfare, and must be upheld as a valid exercise of the police power. Although it was acknowledged that gasoline will not explode while stored in underground tanks, the expert testimony did indicate that fires are more apt to occur from an underground leak or while the tanks are being filled or emptied, and we have many times recognized the hazards involved in the storage and handling of such flammable liquids. (*Chicago Title & Trust Co.* v. *Village of Lombard,* 19 Ill.2d 98; *Gore* v. *City of Carlinville,* 9 Ill.2d 296; *Fligelman* v. *City of Chicago,* 348 Ill. 294.) In both *Schwartz* v. *City of Chicago,* 19 Ill.2d 62, and *Bulk Petroleum Corp.* v. *Chicago,* 18 Ill.2d 383, we sustained the validity of the Chicago ordinance which is quite similar to the one at hand except that it requires gasoline installations to be located 200, rather than 300 feet from such places of public assembly. We do not regard the additional 100-feet set-back requirement as decisive in this case. The Berkeley ordinance deals not only with underground tanks, which are the least hazardous, but also with all storage and handling equipment whether above or below ground. Even though modern safety devices and well-trained personnel can minimize the inherent danger, the enactment is designed to also protect the public from the less conscientious operators.

The judgment of the circuit court of Cook County is therefore affirmed.

*Judgment affirmed.*