MIDWEST PETROLEUM MARKETERS ASSOCIATION *et al..*, Plaintiffs-Appellants, *v.* THE CITY OF THE CHICAGO *et al.*, Defendants-Appellees.—(ILLINOIS GASOLINE DEALERS ASSOCIATION *et al.*, Intervenors-Appellees; ADVOCATES FOR THE HANDICAPPED *et al.*, Intervenors-Appellees.)

First District (4th Division)    No. 79-181

Opinion filed March 13, 1980.

Malkin and Gottlieb, of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Robert Retke and Philip L. Bronstein, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Midwest Petroleum Marketers Association and Gas City, Ltd., brought this action in the circuit court of Cook County, challenging the constitutionality of section 100—7.10 of the Municipal Code of Chicago and regulations 2A, 2D and 3B promulgated thereunder by the commissioner of consumer sales, weights and measures to regulate the self-service sale of gasoline. They seek to enjoin defendants from enforcing the regulations against retail gasoline dealers and also seek a declaratory judgment that the ordinance and regulations are unconstitutional.

The Illinois Gasoline Dealers Association and Advocates for the Handicapped were allowed to intervene as defendants.

During a bench trial, the court granted defendants' motion for judgment at the close of plaintiffs' case and entered an order dismissing the action. Plaintiffs now appeal.

We view the issues presented for review as: (1) whether a justiciable controversy within the meaning of the declaratory judgment statute is presented with regard to regulation 2D (Ill. Rev. Stat. 1977, ch. 110, par. 57.1); (2) whether regulations 2A, 2D and 3B constitute an arbitrary and unconstitutional exercise of the city's police power; (3) whether the adoption of the split-island requirement in regulation 2A exceeds the grant of legislative authority; (4) whether the city council failed to provide intelligible standards to guide the commissioner in regulating fairness in price; and, (5) whether the city's attempt to regulate pricing in the retail gasoline industry violates the constitutional guarantee of equal protection of the laws.

We affirm the trial court.

On May 4, 1977, the city of Chicago adopted section 100—7.10, which prohibits the dispensing of motor fuels in filling stations by unauthorized individuals except as permitted by regulations issued by the commissioner of consumer sales, weights and measures. The ordinance specifies:

> "It shall be unlawful for any person owning or operating a filling station to permit any person other than himself or an employee to dispense flammable and combustible liquids used as motor fuels in a filling station except pursuant to regulations issued by the Commissioner of Consumer Sales, Weights and Measures. *Such regulations shall provide for safety in the dispensing of such motor fuels and for fairness in price, and in the disclosure of price and service.*" (Emphasis added.)

Pursuant to this ordinance, the commissioner issued regulations pertaining to the self-service sale of gasoline. Regulation 2A requires any gasoline station that offers self-service gasoline to also offer full-service gasoline. This has been designated a "split-island" requirement. Under regulation 2D, the price of self-service gasoline must be at least 5% lower than the price of the same grade of gasoline sold at full-service islands at the same station. Regulation 3B requires that at a station providing self-service, as well as full-service, at least one dispensing island must be attended and operated by an authorized attendant. The regulations also provide for the advertising of gasoline prices, installation of safety equipment, and posting of warnings and instructions (Regulations 2B, 2D and 3).

On November 29, 1977, plaintiffs filed a declaratory judgment action

against the city, challenging the regulations that require split-island operation and a 5% differential between the price of gasoline dispensed at full-service and self-service islands. The plaintiffs also challenged the constitutionality of the ordinance insofar as it authorizes the commissioner to promulgate regulations providing for fairness in price.

The Illinois Gasoline Dealers Association, representing owners and operators of retail gasoline stations in Chicago, and some of its members were allowed to intervene as defendants. Advocates for the Handicapped and certain handicapped individuals were also granted leave to intervene.

At trial, plaintiffs called several city employees as adverse witnesses pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) James R. Newbold, director of the Chicago bureau of fire prevention, testified that the primary concern of fire officials with respect to safety at self-service gasoline stations is proper supervision of the self-service pumps by a qualified attendant. Newbold stated that an attendant should be near the pumps to insure that no spillage occurs and that people properly dispense the gasoline. He believed that, at a split-island station, one attendant should be near the self-service island and another working the full-service pumps. He admitted that, from the standpoint of fire safety, the split-island requirement would be unnecessary as long as an attendant was stationed at the self-service pumps, but commented that, of course, the presence of two attendants would create a safer atmosphere.

James J. Barret, chief engineer of the Chicago bureau of fire prevention, testified that he participated in making recommendations to the commissioner regarding the safety requirements of self-service gasoline stations. In preparing his recommendations, Barret considered requirements of other communities, where self-service is permitted, and standards published by the National Fire Prevention Association (NFPA), a nationally recognized group that prepares fire safety standards. Barret stated that neither the ordinances from other jurisdictions that he examined, nor the NFPA standards required a split-island operation. He explained that at the typical self-service station a master switch to the pumps is located on the exterior of the building that houses the cash register, and manual shutoff controls are situated on each pump. In his opinion, the split-island requirement insures that at least one attendant will be near the pumps where he can see gasoline spills, rather than in the office near the cash register.

Terry A. Hocin, deputy commissioner of the department of consumer sales, weights and measures, was also called by plaintiffs as a section 60 witness. Hocin participated in preparing the self-service gasoline regulations. Field studies were conducted by members of his department who visited approximately 1600 gasoline stations within the city to observe their operations. He testified that in preparing the

regulations he relied upon these studies, as well as records provided by the petroleum industry, a report prepared by the Illinois Legislative Council on the economics and safety aspects of gasoline stations, and the recommendations of city and state fire officials. The mayor's office of senior citizens and handicapped persons and individual consumers, senior citizens and handicapped persons requested that the needs of the handicapped be considered in preparing self-service regulations. He also considered a news poll survey of motorists and ordinances from other jurisdictions.

Hocin testified that the purpose of the split-island requirement, besides insuring adequate supervision of the self-service pumps, is to provide full service for the elderly and the handicapped who cannot pump their own gasoline and to assure that preventative maintenance services are available to the public. When asked whether a self-service attendant could not provide service to the handicapped, Hocin stated that it would be difficult to monitor self-service stations to see that the self-service attendants were assisting the handicapped. He further stated that, based on his observations, the attendant at a self-service station is typically behind a counter in the office and not near the service islands to assist people. He interpreted the regulations to require only one attendant near the service islands, who could supervise the self-service pumps as well as operate the full-service pumps.

Finally, Hocin testified that the 5% differential requirement was based primarily on the practice of the gasoline industry prior to the enactment permitting self service. Studies done by his department indicated that at mini-service gasoline stations, which sold gasoline only, the price of gasoline was at least 10% less than at full-service stations. The original differential of 10% was reduced by the commissioner upon the recommendations of industry representatives to allow for inflation.

John E. Elgin, vice-president of retail operations for Martin Oil Service, testified for plaintiffs. Martin Oil Service stations generally provide no services other than the retail sale of gas and oil. Elgin stated that the company operates self-service stations in 12 States, but none in Chicago. It was his opinion that the company could not profitably compete in Chicago under the present self-service regulations. Each station would be able to operate only two islands, a full-service and a self-service, rather than the three it would normally provide for self service, and would require an additional attendant. Under ordinary circumstances, each station is manned by one attendant who collects money, prepares reports, and renders extraordinary assistance to customers upon request.

Plaintiffs' final witness was Donald Woodrick, executive director of the Midwest Petroleum Marketers Association, which represents jobbers

and distributors of independent and major brands of gasoline. Woodrick defined an independent service station as one which sells gasoline only and generally provides no other services. He estimated that 400 to 450 of approximately 1500 service stations in Chicago were independent retailers. He testified that independent service stations cannot profitably operate on a split-island basis because they depend on high volume sales at a low profit margin, which requires maintaining low overhead. In his opinion, the present regulations would increase the cost of self-service gasoline because of the split-island requirement. Woodrick stated that self service is permitted in most Illinois communities, but, to his knowledge, no other community in the State requires split-island operations.

Following this testimony, the plaintiffs rested their case. Thereupon the trial court granted the motion of defendants and intervenors for judgment at the close of plaintiffs' case. The court found that plaintiffs had failed to overcome the presumption of validity accorded the ordinance and regulations and that the split-island requirement was reasonably related to the public safety. With regard to the 5% price differential, the court found that no justiciable controversy was presented. On November 15, 1978, a final order was entered, dismissing the complaint and entering judgment for defendants. Plaintiffs appeal from that order.

OPINION

■■ A preliminary issue is presented by the trial court's determination that no justiciable controversy exists with regard to the 5% differential between the price of full-service and self-service gasoline fixed by regulation 2D. To establish the right to declaratory relief, the party initiating the action must demonstrate the existence of an actual controversy. (Ill. Rev. Stat. 1977, ch. 110, par. 57.1.) "Actual" in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529.) Nevertheless, the declaratory judgment remedy must be liberally construed to accomplish the legislative purpose of providing a method by which a binding declaration of rights may be rendered without requiring the parties to make an irrevocable change in position that might jeopardize those rights. *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529.

In this case, the trial court found no evidence that the price differential in regulation 2D was more restrictive than the actual price

differential now maintained in the gasoline industry and, thus, found no economic hardship imposed by the fairness in price provision of the enabling ordinance. We do not agree that this indicates the absence of a justiciable question.

The complaint alleges that plaintiffs are, or represent, gasoline dealers who may only engage in self-service gasoline sales subject to the challenged ordinance and regulations. It matters not whether plaintiffs can presently operate within the price differential required by regulation 2D, when ever fluctuating gasoline prices threaten plaintiffs with economic loss if the price differential is maintained. The unsettled nature of the economic situation in the gasoline industry is illustrated by the fact that the original 10% differential has already been reduced by the commissioner to 5% to allow for inflation. We believe these facts are sufficient to establish a concrete dispute between the parties admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy between the parties. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529.) Accordingly, we will reach the merits of questions relating to fairness in price.

Plaintiffs do not challenge the right of the city to regulate the operation of gasoline stations. It is well recognized that because of the dangerous and highly flammable nature of gasoline, the operation of a gasoline station is subject to regulation and control by a municipal body in the exercise of its home-rule powers. See, *e.g., Vendley v. Village of Berkeley* (1961), 21 Ill. 2d 563, 173 N.E.2d 506; *Rasmussen v. Village of Bensenville* (1965), 56 Ill. App. 2d 119, 205 N.E.2d 631.

To constitute a legitimate exercise of the police power, municipal legislation must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective. (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 379 N.E.2d 290; *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 265 N.E.2d 640.) Once the legislative body determines that a problem exists and acts to protect and promote the general welfare of its citizens, the legislation is presumed to be a valid exercise of the city's police power. (*Union Cemetery Association v. Cooper* (1953), 414 Ill. 23, 110 N.E.2d 239.) Furthermore, the due process clauses of the State and Federal constitutions, insofar as they operate to limit the exercise of the city's police power, prohibit only its arbitrary and unreasonable use. *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 166 N.E.2d 29.

Administrative regulation, like statutes, are presumptively valid (*Du-Mont Ventilating Co. v. Department of Revenue* (1977), 52 Ill. App. 3d 59, 367 N.E.2d 532, *aff'd* (1978), 73 Ill. 2d 243, 383 N.E.2d 197); and

the one who attacks the regulations bears the burden of establishing their invalidity (*Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 364 N.E.2d 631). A reviewing court may set aside administrative regulations only if they are clearly arbitrary, capricious or unreasonable. *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782.

■ Regulations 2A and 3B relate to safety in the self-service dispensing of gasoline and are an exercise of the city's police power designed to protect the public from the unskillful and negligent use of gasoline. The evidence presented during plaintiffs' case fails to support their contention that the split-island requirement imposed by these regulations is an arbitrary and capricious exercise of the police power. The purpose of the split-island requirement is two-fold: (1) to insure that an attendant will be positioned by the gasoline pumps to supervise the self-service use of gasoline, and (2) to provide full service to the elderly and handicapped. These purposes are plainly related to the legitimate governmental purpose of safeguarding the public and are likewise within the purview of the enabling ordinance allowing the commissioner to implement regulations to provide safety in the self-service dispensing of gasoline.

As interpreted by the commissioner, the split-island regulations require at least one attendant on the driveway of the service station to assist full-service customers and supervise the self-service pumps. It is difficult to understand how this could, as plaintiffs argue, create a dangerous situation, inasmuch as the alternative, a single attendant stationed in an office some distance from the pumps, would provide even less supervision and control over the dispensing of gasoline.

Plaintiffs also suggest that the split-island requirement could be eliminated and the public safety preserved by requiring a single attendant stationed at the self-service pumps. This, however, removes the full-service requirement and leaves assistance for the elderly and handicapped to the whim of the self-service attendant. Even if the plaintiffs' suggestion was a reasonable alternative, we are not empowered to disturb an administrative decision merely because a different regulation might have been feasible, or even wiser. *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 198 N.E.2d 326, *cert. denied* (1965), 379 U.S. 964, 13 L. Ed. 2d 558, 85 S. Ct. 655.

■■■ Plaintiffs next contend that the city council failed to establish any standards in the enabling ordinance to guide the commissioner in regulating fairness in price in the sale of self-service gasoline. A legislative delegation of power must contain intelligible standards to help guide the administrative agency in the implementation of the legislation and thereby prevent abdicating to the agency the legislative body's primary responsibility of determining the objective the legislation is meant to

achieve. (*Thygesen v. Callahan* (1979), 74 Ill. 2d 404, 385 N.E.2d 699.) In delegating its authority, the legislative body must provide sufficient identification of: (1) the persons and activities potentially subject to the regulation, (2) the harm sought to be prevented, and (3) the general means intended to be available to the administrator to prevent the identified harm. *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E. 875.

The fairness in price provision in section 100—7.10 clearly meets the first element of this analysis. The activity subject to the legislation is the self-service dispensing of gasoline. The harm sought to be prevented is the imposition of unfair prices for gasoline dispensed in this manner. As stated in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 373, 369 N.E.2d 875, 879: "With regard to identifying the harm sought to be prevented, the legislature may use somewhat broader, more generic language than in the first element." The legislation indicates that one of the purposes sought to be attained by the city council in allowing the self-service sale of gasoline was that the lower cost realized by dealers dispensing gasoline in this manner would be reflected in the price charged the public. Finally, the ordinance clearly calls for some type of price regulation related to the economies of the self-service sale of gasoline as the means of accomplishing its objective.

Because the ordinance sufficiently identifies the harm to be remedied by the regulations adopted by the commissioner, we do not believe the ordinance suffers from the same infirmity found to affect the legislation in *Thygesen v. Callahan* (1979), 74 Ill. 2d 404, 385 N.E.2d 699.

The United States Supreme Court's decision in *Nebbia v. New York* (1934), 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505, put to rest the notion that price regulation under the guise of the police power necessarily contravenes the due process clause.[1] The same test is to be applied to legislation affecting prices as to other police power enactments. If the legislation has a reasonable relationship to a proper legislative purpose and is neither arbitrary nor discriminatory, the requirements of due process are satisfied. See *People v. Patton* (1974), 57 Ill. 2d 43, 309 N.E.2d 572.

Regulation 2D does not attempt to set the actual selling price of gasoline, but attempts to guarantee that the dealer's savings will also benefit the consumer. Insuring that the economies realized by retailers of self-service gasoline are passed on to the public is a matter of legitimate public concern. The only testimony on this issue at trial disclosed that the

---

[1] The "affected with a public interest" test applied in *Williams v. Standard Oil Co.* (1929), 278 U.S. 235, 73 L. Ed. 287, 49 S. Ct. 115, to invalidate price regulation in the gasoline industry has been abandoned by the Supreme Court in later cases. See *Nebbia v. New York* (1934), 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505; *Olsen v. Nebraska* (1941), 313 U.S. 236, 85 L. Ed. 1305, 61 S. Ct. 862.

5% differential is well within the differential presently experienced by the retail gasoline industry between the cost of full-service and self-service gasoline. Plaintiffs introduced no evidence that would indicate that the 5% differential is either arbitrary or capricious.

Relying on *Figura v. Cummins* (1954), 4 Ill. 2d 44, 122 N.E.2d 162, plaintiffs contend that regulations 2A, 2D and 3B, taken together, impose unnecessary and unreasonable restrictions upon the retail gasoline industry. In *Figura*, the Illinois Supreme Court found unconstitutional a State statute prohibiting home work in the processing of metal springs. It was undisputed in that case that metal springs were completely harmless to home workers and that the only possible danger associated with home production was related to a foot press utilized in the manufacturing process. The court found the possibility of injury from the foot press to be too remote to justify an absolute prohibition on the home production of metal springs.

The nature of the harm sought to be prevented and the scope of the restrictions imposed by the regulations clearly distinguish the instant case from the facts in *Figura*. Self-service dispensing of gasoline is potentially very hazardous. Regulations insuring adequate supervision, assistance for persons unable to dispense their own gasoline, and a price which reflects the nature of the service provided, are not so restrictive as to prohibit the business of selling self-service gasoline. These regulations are clearly within the parameters of the police power. Legislation totally prohibiting the self-service sale of gasoline has been upheld in several jurisdictions. See, *e.g., Town of Milton v. Attorney General* (1977), 372 Mass. 694, 363 N.E.2d 679; *J & L Oil Co. v. City of Carrollton* (1973), 230 Ga. 817, 199 S.E.2d 190; *Hi-Lo Oil Co. v. City of Crowley* (La. App. 1973), 274 So. 2d 757; *McCardle v. City of Jackson* (Miss. 1972), 260 So. 2d 482.

Indeed, more restrictive controls on the retail gasoline industry than found in this case were recently approved by the United States Supreme Court. In *Exxon Corp. v. Governor of Maryland* (1978), 437 U.S. 117, 57 L. Ed. 2d 91, 98 S. Ct. 2207, that court rejected a substantive due process challenge to State legislation prohibiting gasoline producers and refiners from operating their own stations. The court stated:

> "[T]he Due Process Clause does not empower the judiciary 'to sit as a "superlegislature to weigh the wisdom of legislation" * * *.' *Ferguson v. Skrupa*, 372 U.S. 726, 731 (citation omitted). Responding to evidence that producers and refiners were favoring company-operated stations in the allocation of gasoline and that this would eventually decrease the competitiveness of the retail market, the State enacted a law prohibiting producers and refiners from operating their own stations. Appellants argue that this response is irrational and that it will frustrate rather than further

the State's desired goal of enhancing competition. But, as the Court of Appeals observed, this argument rests simply on an evaluation of the economic wisdom of the statute [citation], and cannot override the State's authority 'to legislate against what are found to be injurious practices in their internal commercial and business affairs * * *.' *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 536. Regardless of the ultimate economic efficacy of the statute, we have no hesitancy in concluding that it bears a reasonable relation to the State's legitimate purpose in controlling the gasoline retail market, and we therefore reject appellant's due process claim." 437 U.S. 117, 124-25, 57 L. Ed. 2d 91, 99, 98 S. Ct. 2207, 2213.

Similarly, in this case, we do not find that the potential for economic restraint in the retail gasoline industry outweighs the legitimate governmental objective of these regulations.

Finally, there is no basis for claiming that the regulation of pricing in the retail gasoline industry is unfairly discriminatory. To establish discrimination one must show that he belongs to the same class as those allegedly receiving preferential treatment. (*Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 65 N.E.2d 805.) The self-service ordinance and regulations operate alike upon all retail gasoline dealers. This group is distinguishable from other retail businesses where customers are allowed to serve themselves, primarily because, as the retail gasoline industry has developed, dealers traditionally and even legally have been required to provide dispensing services for their customers.

We therefore conclude that plaintiffs have failed to sustain their burden of overcoming the presumptive validity of section 100—7.10 of the Municipal Code of Chicago and regulations 2A, 2D and 3B adopted pursuant thereto. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI and ROMITI, JJ., concur.