JAMES P. REEDY *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF WHEATON, Defendant-Appellant.

Second District    No. 81-110

Opinion filed December 21, 1981.

Edward J. Walsh, Jr., of Huck and Walsh, of Wheaton, for appellant.

Keith E. Roberts, Rodney W. Equi, and Kristine A. Karlin, all of Donovan & Roberts, P. C., of Wheaton, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiffs sought a declaratory judgment permitting the building of a "Citgo" gasoline service station and a "Quik-Mart" grocery store under a special use provision of the Wheaton zoning ordinance. In count I plaintiffs alleged that the zoning ordinance was unconstitutional as applied to their property; in count II, that it was unconstitutional on its face. The trial court entered judgment for the plaintiffs based on both counts. The City appeals.

■■■ We disagree with the trial court's finding with reference to count II that the City's classification scheme, which excluded gasoline service stations from a list of permitted uses in the C-1 Local Business District, was arbitrary and unreasonable and therefore facially unconstitutional. Municipalities have long restricted the development of gasoline stations by special use permit, having recognized that gas stations pose potentially serious problems which may include traffic congestion, noise, danger of fire from fuel storage and inflammable petroleum products, and depreciation of surrounding property values. (See generally 6 P. J. Rohan, Zoning and Land Use Controls §40-04[4] (1981).) Courts have consistently upheld such regulation as related to public health, safety and welfare. (See, e.g., *Vendley v. Village of Berkeley* (1961), 21 Ill. 2d 563, 568; *Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 500; *Rasmussen v. Village of Bensenville* (1965), 56 Ill. App. 2d 119, 123.) Where room exists for a difference of opinion concerning the reasonableness of the zoning classification, the legislative judgment is conclusive. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d

415, 428.) The City's regulation of automobile stations, which under the terms of the special use provision may include self-service stations as in the present case by special permit, is a proper means of controlling an infrequent use which is beneficial but potentially inconsistent with normal uses in various zones. *Schmeisser v. Village of Niles* (1969), 113 Ill. App. 2d 114, 117-18.

■■ Plaintiffs' reliance on *Frost v. Village of Glen Ellyn* (1964), 30 Ill. 2d 241, is misplaced in our view. In *Frost*, the supreme court held that no real difference existed between drive-in restaurants, which were allowed only by special use permits, and many of the more than 62 special business uses which were directly permitted under the ordinance, including restaurants generally. (30 Ill. 2d 241, 245-46.) Here, we perceive substantial differences affecting the public interests between a gasoline service station in combination with a retail outlet for grocery sales and such permitted zoning uses as offices, various retail sales shops and a restaurant. Here, we conclude that the legislative classification is reasonable on its face and therefore constitutionally valid.

We next address the finding of the trial court that the ordinance has been unconstitutionally applied to the subject property. The City contends that the judgment as based upon count I of the complaint is against the manifest weight of the evidence. We briefly review the record.

The property is an unimproved parcel consisting of approximately one-half acre situated on the northeast corner of Butterfield and Bradford Roads at the entrance of Briarbrook Commons Shopping Center within the corporate limits of Wheaton. Butterfield Road is a major east-west collector arterial roadway with a current speed limit of 45 miles per hour. Bradford Drive is a north-south local road which intersects with Butterfield Road at the entrance to the shopping center.

The subject property is zoned in a C-1 Local Business District. The properties to the north, east and west are similarly zoned. South of the subject property, across Butterfield Road, there is a residential zone, the homes backing up to that highway.

The land immediately east is vacant; to the immediate west a drive-in bank operates under a special use permit; and to the north is the Briarbrook Commons shopping center which includes a two-story office building, real estate office, bathroom boutique shop, hobby shop, laundry, pipe shop, a large food store, and a now closed pizzeria.

The proposed "Quik-Mart" is a combined self-service gasoline station and retail outlet for limited sales of convenience groceries. The proposed operating hours are 6 a.m. to 11:30 p.m. There are three gas stations approximately three miles east of the subject property, and one station approximately .82 miles east of the property.

Several appraisal experts testified for the plaintiffs that a gasoline

service station would be among the highest and best uses for the property; that the fair market value of the property if used as proposed would be $135,000; but if not so developed there would be a significant depreciating effect on the value; and that the proposed development would have no depreciating effect on the surrounding residential properties.

A considerable portion of the testimony was directed to the issue of traffic problems involved in the proposed development. Testimony on behalf of the plaintiffs conceded that the development would create additional traffic. Plaintiffs, however, presented the expert testimony of Joseph Zgonina, a registered professional engineer, who concluded that the development would generate very little additional traffic and that the traffic which it did attract from the street system could be adequately accommodated by existing signals and turning lanes at the intersection. He conducted detailed manual traffic counts at the intersection and made an analysis as to the directional split of traffic, the turning movement volumes, the capacity of the intersection; and consulted with the Illinois Department of Transportation relative to required roadway improvements. His traffic count was taken during a 7 a.m. to 9 a.m. period which he considered to be the peak traffic time in the morning. In addition he made general observations of traffic flow in other time periods of the day as well as the afternoon peak street traffic hour. On cross-examination, he admitted that he performed his study prior to when the stores in the shopping center opened and before the drive-in bank had commenced operation.

In contrast Paul Box, a traffic engineer, testifying for the City concluded that the project would create traffic hazards during peak hours at the intersection and internally on the site. His study was completed two years after the Zgonina study, at a time when both the drive-in bank and the stores in the shopping center were open. On cross-examination Box said that his study had been done on the last day of the month, when traffic volume entering the driveway of the bank was expected to be highest. He acknowledged that he performed no study on possible "gaps" in the traffic stream which Zgonina had said would allow safe ingress onto and egress off of Butterfield Road. He also admitted that he did not know whether certain other permitted uses might or might not generate more traffic than a self-service station.

The court found that the highest and best use of the subject property appears to be that of a drive-in facility as proposed by the plaintiffs. He found no basis for the City's claim that the location of the facility would create a potential detrimental effect or safety hazard, considering that any such defect would be satisfactorily cured by proper traffic control devices and engineering required by the Illinois Department of Transportation and the City.

██ The review of a denial of a special use permit is tested by whether the denial bears a real and substantial relation to the public health, safety, morals or general welfare. (*Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 116.) Essentially, the only significant impact on the public welfare urged by the City is that the proposed use will create a serious traffic hazard.

We have held that a traffic hazard created by a particular use at a particular location is distinguishable from a general increase in traffic and may be a basis for denial of a special use permit. (*Haws v. Village of Hinsdale* (1979), 68 Ill. App. 3d 226, 232.) The testimony on this issue is conflicting. In *Haws*, we noted that what will cause undue traffic congestion and hazards is not subject to a precise definition. (68 Ill. App. 3d 226, 235.) It was Zgonina's opinion that the proposed use would have a very negligible impact on traffic flow premised on his belief that service stations of the type proposed are not separate generators of traffic but attract patrons from traffic volumes already on the street system. In fact, defendant's expert Box acknowledged that this was generally true. The dispute between the experts particularly was over whether the traffic at the location could be adequately accommodated by the existing signals and other engineering. While the Zgonina study suffers from the fact that it was not done at a time when both the drive-in bank and the stores in the shopping center were open, we conclude that there was a substantial basis for Zgonina's opinion. The issue of weight and credibility was for the trier of the facts. In zoning cases as in others, the finding of the trial court will not be disturbed unless it is against the manifest weight of the evidence; and a mere conflict in the evidence does not require a finding that the reasonableness of the ordinance is debatable, but goes to the credibility of witnesses and the weight to be afforded their testimony; and in order for a finding to be contrary to the manifest weight of the evidence an opposite conclusion must be clearly apparent. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53-54.

In the circumstances we are unable to conclude that the trial court's findings were against the manifest weight of the evidence and therefore will uphold the resolution of the issues by the trial court. Undoubtedly the proposed use would add to the amount of traffic on or near the subject site. However, this is also true of the special use previously permitted for the drive-in bank. Any retail business or commercial use of the property would similarly result in an increase of traffic. The evidence supports a finding that there was sufficient capacity in the street system to accommodate an increase in traffic. There was additional testimony in the record that the traffic signal and lane widening improvements, together with restricted right turn movements onto Butterfield Road, would not

have an adverse impact on the traffic stream. See *La Salle National Bank v. City of Park Ridge* (1979), 74 Ill. App. 3d 647, 663.

We therefore reverse the judgment insofar as it holds the ordinance unconstitutional on its face and affirm that portion of the judgment which held the ordinance unconstitutional as applied.

Affirmed in part, reversed in part.

NASH and REINHARD, JJ., concur.