THE CITY OF PARK RIDGE, Defendant-Appellant, *v.* RICHARD R. BEGG, Plaintiff-Appellee.

First District (4th Division)   No. 81—3114

Opinion filed November 24, 1982.

JOHNSON, P.J., specially concurring.

Paul N. Keller, of Park Ridge, for appellant.

Stanley H. Jakala, of Berwyn, for appellee.

Wayne W. Schmidt, of South San Francisco, California, and William E. Hornsby, Jr., and James P. Manak, both of Chicago, and James A. Murphy, of Peoria, for *amici curiae.*

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff Richard Begg, a police officer with the city of Park Ridge, was suspended without pay for three days by order of the city's director of public safety because he failed to meet certain job performance standards relating to the number of traffic tickets he issued and the number of nontraffic activities he performed. That order was affirmed following an evidentiary hearing before the Park Ridge Fire and Police Commission. However, plaintiff then filed an administrative review action and the circuit court of Cook County reversed the commission, finding that plaintiff was suspended on the basis of a traffic quota system which was against public policy. On appeal to this court defendants contend that the circuit court's finding was not supported by the record.

We reverse.

At the hearing before the Fire and Police Commission the following pertinent evidence was adduced. In December 1977, Captain John Baudek, commander of the field operations bureau of the city's police department, issued an order setting traffic enforcement standards for patrol officers. The order stated, *inter alia:*

"With the number of miles that a patrol officer drives during a watch and the high volume of traffic in the Park Ridge area *** it is reasonable for an officer to observe one traffic violation during a watch. Keeping in mind the midnight watch and other consideration [*sic*], a patrol officer will be expected to issue .80 [traffic] citations per day of patrol over a standard

three-month watch cycle."

The order noted that the standard was below that presently performed by many officers. Baudek also stated in the order:

"While a deviation below the standard does not automatically mean the officer is below an acceptable level of performance, I would expect his supervisor to be able to explain such a deviation if the officer is given a acceptable rating in that area of performance on his evaluation."

In his testimony at the hearing Baudek explained that his purpose in issuing the order was to set standards which were quantifiable and measurable rather than having totally subjective personal opinion standards of evaluation. Another reason for setting the standards was to reduce the number of accidents. On this latter point he testified that the number of accidents in Park Ridge had increased since the standard was set, but also stated that the traffic count had also increased in that period. According to Baudek the traffic citation standards were required to be met unless there were extenuating circumstances.

Baudek also testified that there existed a second category of activities used to judge the officers. These activities included nontraffic violations and such tasks as checking doors at the homes of vacationing residents of Park Ridge. There was no set standard established for this category, but supervisors were told what the averages were for each watch and department. According to Baudek these two categories constituted only one small part of the overall evaluation of the officers. Evaluation forms were completed by the officer's watch commander.

Lieutenant George Teune, plaintiff's watch commander, testified that those evaluation forms included matters such as the officer's initiative, promptness, and the amount of sick time he used in addition to the two categories of objective performance statistics. He estimated that those two categories counted for 40% to 50% of the evaluation. It was his opinion that establishing the objective standards had reduced the number of accidents in Park Ridge. He also noted that another purpose of those standards was to establish a norm from which superior performance could be identified. He conceded that those standards amounted to a quota system.

In an order issued April 24, 1980, plaintiff was warned that his performance on the police department was not at an acceptable level. He had used an unacceptable amount of sick time and had been suspended for one day earlier that year for the misuse of sick time. His traffic index score for 1979 was .40. His score in that category for the

first quarter of 1980 was .15, the lowest in the department and well below the departmental average of .829. His score for nontraffic activities for 1979 was .76, while the departmental average for that period was 1.75. His first-quarter 1980 score for that index was .99, while the departmental average was 1.50. Plaintiff was informed in the order that for the second quarter of 1980 he had to achieve traffic index and nontraffic index scores of .80 and 1.50 respectively. He was also instructed to reduce his sick time usage, barring serious illness or injury, not to do anything requiring disciplinary action to be taken against him, and to obtain a departmental physical exam. (It is conceded that he met the latter three requirements.)

It was established without contradiction at the hearing that plaintiff failed to meet the index requirements for the second quarter of 1980. His traffic index average was .59, while the departmental average was .92 and his watch's average was also .92. His nontraffic index average was .97 while his watch's average was 1.86 and that of the department was 1.66. Accordingly, a letter of reprimand was issued and he was suspended without pay for three days.

Plaintiff testified that he was in his 18th year with the Park Ridge police force. It was his opinion that the index requirements constituted a quota and that 90% of the evaluation of officers was based on fulfillment of those index requirements. He stated that the indexes did not reflect all that he did, such as referring young drivers to their parents rather than issuing citations to them the first time. He had issued only one traffic ticket in 21 days in April because he saw none others that were "of a hazardous nature that would require a ticket." He gave as an example of such a nonhazardous violation a rolling stop with no traffic present. He conceded that in May he made a special attempt to bring up his traffic index; that month his traffic index was 1.80. According to plaintiff the highest volume activity performed by officers in relation to their nontraffic activity index was checking on vacant homes. He testified that he had seen officers marking down the time, date, location and condition of homes before they went on patrol; however, he could not recall the names of the officers he saw doing this. Plaintiff called as witnesses a number of Park Ridge police officers who testified that they considered the index requirements to be quotas and who believed that fulfillment of those quotas constituted the most important part of their evaluations. Several officers also testified that they had observed other officers noting in police records that they had checked vacant houses before they even went on patrol; however, none of the officers testified that those homes were in fact not subsequently checked.

Based on this evidence the Fire and Police Commission found that plaintiff had not met the required performance standards for traffic citations and nontraffic activities and further found that he had not established any mitigating circumstances sufficient to excuse his performance below those standards. Accordingly, his three-day suspension without pay was affirmed. The sole basis for the circuit court's reversal of this decision was its finding that plaintiff was suspended on the basis of a traffic quota system which was against public policy.

■ The sole issue before us is the validity of the circuit court's determination that the city of Park Ridge could not require plaintiff to meet the standards at issue. In determining this issue we note that administrative regulations, like statutes, are presumptively valid and one attacking such regulations has the burden of establishing their invalidity. (*Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 402 N.E.2d 709.) Moreover, such regulations will be set aside by a reviewing court only if they are found to be clearly arbitrary, capricious or unreasonable. *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782; *Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 346 N.E.2d 212.

■ Plaintiff's central challenge to the regulations at issue appears to be that they establish an absolute quota to be met by police officers and that such quota systems are *per se* against public policy. For that proposition plaintiff cites *People v. Patterson* (1980), 88 Ill. App. 3d 144, 410 N.E.2d 223, and *Bodenschatz v. State Personnel Board* (1971), 15 Cal. App. 3d 775, 93 Cal. Rptr. 471. But neither of those cases even involved quota systems. In *Patterson*, despite uncontradicted testimony from a police officer that the defendant was initially stopped for speeding, the trial court had suppressed evidence discovered as the result of that stop on the ground that the officer lacked probable cause for the stop. In reversing that holding the appellate court noted that the fact the motorist was not charged by the officer with speeding but was only issued a warning did not justify the circuit court's disbelief of the officer. The court noted that an officer may always issue a warning or reprimand without citing a motorist. We find nothing in that statement of the discretion invested in a police officer to support the proposition that the regulation at issue here is against public policy. Nothing in the record indicates that plaintiff was not free to exercise his discretion in a similar manner in any individual case. In *Bodenschatz* a police officer was dismissed because his enforcement activity was well below the average for his fellow officers. The officer challenged his dismissal in part because he

contended that his level of activity was low only because the police department had a policy of requiring its officers to engage in more enforcement activity than circumstances warranted. The appellate court agreed that such a policy would be improper as contrary to the public interest but noted that the officer had failed to meet his burden of proving that such a policy was in existence. In this cause there was no evidence to suggest that plaintiff was being asked to meet standards which were unreasonably high. Nor was there any testimony that other police officers or the plaintiff would have had to issue unjustified citations to meet the standards.

Plaintiff contends that the traffic index requirement was improper because it had not resulted in reducing accidents in Park Ridge, one of the stated goals set for it. But no such evidence was presented at the hearing. Captain Baudek conceded that the number of accidents had increased, but he also testified that traffic had also increased. Lieutenant Teune specifically testified that he believed establishing objective standards had reduced the number of accidents in Park Ridge. Moreover, there were other stated goals intended to be achieved by these objective standards. They provided a means of evaluating officers in terms of minimal performance as well as identifying superior performance.

Finally plaintiff contends that too much emphasis was placed on the objective standards rather than overall police performance. However, Captain Baudek testified that the two objective categories were only a small part of the evaluation of officers. Lieutenant Teune estimated that the objective standards comprised less than half of the total evaluation. The commission was free to accept these lesser estimates as opposed to the greater percentages testified to by plaintiff's witnesses who of course did not conduct the evaluations. Furthermore plaintiff has failed to demonstrate that even great reliance on such objective standards would be unreasonable.

Clearly plaintiff failed to meet his burden of establishing that the challenged regulations were arbitrary or unreasonable.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

LINN, J., concurs.

PRESIDING JUSTICE JOHNSON, specially concurring:

I concur with the result reached by the majority that the judgment of the circuit court must be reversed. The effect of this decision

is to restore plaintiff to his original position. I believe, however, that the case should be remanded to the circuit court for a determination of whether there is sufficient basis for suspension of plaintiff without regard to plaintiff's failure to satisfy the requirements of the traffic ticket quota system.

The cases cited by defendants in support of their position, with the exception of *Bodenschatz v. State Personnel Board* (1971), 15 Cal. App. 3d 775, 93 Cal. Rptr. 471, deal with the administrative regulations as such and not with the problems of traffic ticket quota systems, which raise questions of a different nature. In *Bodenschatz*, the administrative regulation in question had a quantity requirement as does the regulation in this case. However, in *Bodenschatz*, the overriding function of the administrative regulation was traffic law enforcement and not a straight numerical requirement such as is present in this case.

In the instant case, the circuit court held that traffic ticket quota systems are "against public policy" and set aside the decision of the Park Ridge Fire and Police Commission suspending plaintiff. The majority here did, indeed, subject the Park Ridge traffic ticket quota system to judicial scrutiny, but, in so doing, applied the usual test for a judicial examination of the validity of administrative regulations. That test is (1) presume the regulation to be valid and (2) invalidate it only if it is arbitrary and unreasonable. By applying this test mechanically to this situation, the majority ignores serious public policy objections to a traffic ticket quota system. Although I agree in general that the "arbitrary and unreasonable" test is appropriate for cases involving the validity of administrative regulations, when a regulation requires a police officer to charge members of the public with a certain number of quasi-criminal infractions per day, far more serious questions are raised. It is no longer simply a question of whether the statute is arbitrary and unreasonable. For example, if it could be shown statistically that an increased issuance of traffic tickets reduces traffic accidents, then the quota system would arguably survive the arbitrary and unreasonable test applied by the majority to the quota system in this case. Nonetheless, if a police officer, to keep his job, to get promoted and/or to gain favor with his superiors, issues traffic tickets to innocent people, serious public policy concerns arise. Public policy, of course, is a vague notion encompassing many different ideas. Due process under both the Federal and State constitutions requires officers of the State to act in a fundamentally fair and objective manner. A traffic ticket quota system interjects an extraneous and irrelevant, yet personally important, factor into the decision-making process. The

real question should be whether the police officer had reasonable grounds to believe that a traffic ordinance had been violated—not how many tickets the officer must issue that month in order to retain his job.

In my opinion, this court correctly reversed the decision of the circuit court, but we should remand the case to the trial court to determine whether the decision of the Park Ridge Fire and Police Commission can be upheld without regard to the quota system.