(No. 33188.—

IRMINA FIGURA *et al.,* Appellees, *vs.* ROY F. CUMMINS, Director of Labor, *et al.,* Appellants.

*Opinion filed October 25, 1954.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellants.

DAVID, FAINMAN & ABRAHAMS, of Chicago, (SIGMUND W. DAVID, and ARTHUR C. CHAPMAN, of counsel,) for appellees.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

In a proceeding for a declaratory judgment instituted by plaintiffs, Lewis Spring Company and Irmina Figura, Estelle Zbylut and Estelle Zawislak, on their own behalf and on behalf of 100 home workers employed by the plaintiff company, the circuit court of Cook County held that paragraph G of section 2 of the Industrial Home Work Act, (Ill. Rev. Stat. 1953, chap. 48, pars. 251-260,) which prohibits the processing of metal springs by home workers, was unconstitutional, and enjoined defendants, Roy Cummins, Director of the Department of Labor, and Latham Castle, Attorney General of the State of Illinois, from enforcing the said void statutory provisions against plaintiffs.

The sole issue presented upon this appeal is whether paragraph G of section 2 of the Industrial Home Work

Act constitutes a proper and constitutional exercise of the police power of the State.

According to the facts adduced from the pleadings and evidence, the plaintiffs, Lewis Spring Company, an Illinois corporation engaged in the business of manufacturing and selling mechanical springs and coils used in television and radio sets and household appliances, and three home workers, constituting a special committee suing on behalf of themselves and other home workers of the company, sought a declaratory judgment of the constitutionality of the provision prohibiting the processing of metal springs by home workers, which was added to the act by amendment in 1953. Prior thereto, and since the enactment of the act sixteen years earlier, section 2 prohibited industrial home work involving the processing of articles of food or drink, drugs or poisons, medical and surgical bandages, sanitary napkins, cotton batting, fireworks, explosives, toys, dolls and tobacco. In 1951 a proposed amendment prohibiting the processing of mechanical purpose springs was vetoed; however, in 1953, a bill which originally prohibited the processing of metal springs "and metal products," but which was altered to merely prohibit the processing of metal springs, became law, and is the subject of this inquiry.

It appears further that plaintiff Lewis Spring Company employs about 400 persons, some 110 of which are home workers who do the bending, gauging, assembling, looping and trimming of the springs. The bending, gauging and assembling are done with small hand tools, whereas looping and trimming involve the use of foot presses. Only 25 per cent of the home workers use the foot press, and the remaining 75 per cent use only hand tools.

On the hearing for a preliminary injunction, the State offered evidence of some finger abrasions sustained from the operation of a kick press in a factory. The court, at the close of that preliminary hearing, in analyzing section 2 of the act, pointed out that paragraphs A to F, which had

been in force since 1937, were justified because of the inherently dangerous nature of the articles themselves to the home workers or the public, whereas the prohibition in paragraph G related to a supposed danger in the processing of an article harmless to the public and the home worker. On the basis of the evidence adduced at that hearing, the court held that if a kick press were dangerous, it would be so irrespective of whether it were used in processing a metal spring or other metal object; consequently, the selection of the processing of metal springs in the statute was arbitrary and unconstitutional.

At the trial it was stipulated that defendants' evidence on the motion for a temporary injunction might be considered. Defendants introduced no further evidence, although defendant Department of Labor supervises and keeps records of the industrial home work done in the State, and the accidents incidental thereto. Plaintiffs offered evidence of what the home work consisted of, the tools involved, how they were operated, testimony of a tool maker who supervised all the home workers using foot presses for the Lewis Spring Company, and testimony of home workers who had small children and who had worked with foot presses. Their testimony revealed that no home worker for Lewis Spring Company, nor a child of a home worker, nor member of the household, had ever been slightly injured or injuriously affected by the foot press or the operation thereof, and that it was practically impossible for anybody to be so injured, or for even a small child to put his finger in the one-fourth-inch aperture for the looping die.

The court found upon undisputed evidence and stipulation that the metal springs themselves were completely harmless to the home workers, their households, or users of the products into which the springs are incorporated; that all of the six hand tools used by the plaintiff home workers are not dangerous or injurious to the health, safety and welfare of the home workers or members of their

households; and that in the eight years during which home workers have worked on metal springs for the Lewis Spring Company, no home worker, or member of his family, had ever been injured or his health injuriously affected in the processing of metal springs. The court found, however, on the basis of its own physical observation, that the foot press used in connection with the die for looping, if unguarded, is dangerous to small children. Upon inquiry by the court, plaintiffs' counsel stated that while no cover or guard had heretofore been furnished for the foot press, one could be made.

The court held that inasmuch as the foot press can be, and is used for processing other metal products by home workers, and that since there is no reasonable basis for prohibiting home work in the processing of metal springs and not prohibiting it in the processing of other products which have the potentiality of being at least as or more dangerous and injurious to the health and safety of home workers and members of their households, therefore paragraph G of section 2 of the act violates section 22 of article IV of the Illinois constitution prohibiting the enactment of special laws, and deprives plaintiffs of the rights, privileges and immunities guaranteed by sections 1 and 2 of article II of the Illinois constitution and section 1 of the fourteenth amendment of the Federal constitution, and decreed that a permanent injunction be issued against defendants.

In determining the propriety of that decree it is evident that there is a firmly entrenched constitutional principle that every citizen is guaranteed the right to engage in any lawful, useful and harmless business or trade, and that it is not within the constitutional authority of the State legislature in the exercise of the police power to interfere with that right of the individual where no interest of the public safety, welfare or morals is damaged or threatened. *People ex rel. Barrett* v. *Thillens,* 400 Ill. 224.

It is an equally well-established principle of constitutional law that under the police power of the State the legislature has the power to restrict or prohibit the exercise of a legitimate trade where it is necessary for the protion of the public health, morals, safety or welfare; however, such restraint must be a reasonable one, and be reasonably adapted to obtain the objective intended. (*People* v. *Brown*, 407 Ill. 565.) The decisions, however, are replete with caveats enunciated by the courts that the legislature cannot invoke the police power on the pretense of protecting public interests, where the actual objective of the statute is an arbitrary interference with private business, or where the legislation imposes unnecessary or unreasonable restrictions upon lawful occupations. (*People* v. *Carolene Products Co*. 345 Ill. 166; *Scully* v. *Hallihan,* 365 Ill. 185; *Banghart* v. *Walsh,* 339 Ill. 132.) The Supreme Court of the United States has also been vigilant in safeguarding the right of the individual to engage in a legitimate business, under the guarantees of section 1 of the fourteenth amendment of the Federal constitution. *Liggett Co.* v. *Baldridge,* 278 U.S. 105.

The mere fact that the legislature has invoked the police power to restrict or prohibit a particular trade is not conclusive that the power was lawfully exercised, and it is the province of the court to determine that issue. (*People* v. *Brown*, 407 Ill. 565, 572.) It is therefore incumbent upon this court to determine whether the evidence establishes that home work on metal springs could be deemed dangerous to the public health, safety, or welfare to warrant restrictions on the trade; whether the prohibition imposed is reasonable; and whether the prohibition is reasonably adapted to obtain the statutory objective.

The avowed purpose of the Industrial Home Work Act, enacted in 1937, was to regulate industrial work done at home by employees on material furnished by employers. As hereinbefore noted, the statute prior to 1953 only pro-

hibited home workers from processing articles which themselves were dangerous to the home worker or to the public, either inherently, or by reason of being made in the home, such as articles of food, drink, medical and surgical dressings, and explosives. However, according to the undisputed evidence, the metal springs prohibited under paragraph G are not themselves dangerous, either to the home worker or their families, or to the public, and whatever danger could be involved relates to the use of a particular tool in the processing. Hence, this prohibition is distinguishable from the remainder of section 2 of the act, and does not have the same justification as do the other prohibitions.

With reference to the dangers incident to the processing of metal springs our review of the record reveals that 75 per cent of the home workers engaged in the processing of metal springs for the plaintiff company use only hand tools which are conceded to be harmless; and only 25 per cent of the home workers use the foot press which allegedly is dangerous. Moreover, in the eight years that the foot press has been used by plaintiff home workers, most of whom have children, no home worker or member of his family has ever been injured or injuriously affected by the operation of the foot press. Defendants' evidence at the hearing on the preliminary injunction that there were some finger abrasions in the operation of a kick press in a factory was entirely irrelevant, since it related to a different tool, used on other products, operated differently, and in a factory rather than in a home. The remote possibility of injury in the operation of the foot press does not constitute a showing that public health, safety, morals or welfare is endangered by the pursuit of this trade, and therefore, this trade cannot be deemed a proper subject for the exercise of the police power.

Plaintiffs further contend that even if there were elements of danger in the trade, they do not justify the com-

plete elimination of home work on metal springs, as imposed by the terms of paragraph G of section 2.

In *People* v. *Thillens,* 400 Ill. 224, this court stated: "Where, in any business, elements of harm, injury or detriment to public welfare or safety of the public appear, requiring regulation for the public good, such elements of harm may be the proper ground for reasonable regulation, but they are not ground for a complete suppression and prohibition of the business, which in itself is innocent and harmless." That statement of the law was consistent with the decision in *People* v. *Weiner,* 271 Ill. 74, where the court held unconstitutional a statute prohibiting the sale of second-hand mattresses, quilts and comforters, where the evidence showed that all danger to health and safety of the public from said products could be removed by sterilization. The court stated therein: "To prohibit absolutely the use of such material in the manufacture of mattresses for sale when not inherently dangerous and when it may be rendered safe by reasonable regulation is an invasion of personal and property rights within the meaning of the Federal and State constitutions."

The record herein reveals that the prohibition in paragraph G of section 2 of the act destroys a material part of the business operations of the plaintiff company, which employs over 100 home workers, who constitute at least one fourth of its staff, and who are paid over $100,000 a year. The prohibition also deprives of their livelihood all home workers engaged in the trade of processing metal springs, even though three-fourths of them do not in any way use the allegedly dangerous foot press. Whatever danger the trial court envisaged from the mere presence of the foot press in the home could be entirely eliminated by a regulation requiring foot presses used in the processing of metal products by home workers to be provided with guards. Consequently, the categorical elimination of the entire home work industry engaged in processing metal

springs is not the reasonable restraint and regulation in the interest of public welfare contemplated by the courts as the proper domain of the police power. *Frazer* v. *Shelton,* 320 Ill. 253; *Scully* v. *Hallihan,* 365 Ill. 185.

Plaintiffs contend further that the provision does not tend to attain the legislative objective of greater public safety, and thereby omits another essential element for a proper exercise of the police power. To constitute a valid exercise of the police power, the regulation or prohibition in the statute must be reasonably related to the purpose to be accomplished. *Metropolitan Trust Co.* v. *Jones,* 384 Ill. 248; *Northern Illinois Coal Corp.* v. *Medill,* 397 Ill. 98.

Plaintiffs assail the legislation under consideration on other grounds, but we see no useful purpose in prolonging this opinion with an analysis of them. On the basis of the foregoing the judgment of the trial court declaring paragraph G of section 2 of the Industrial Home Work Act to be an improper exercise of the police power in violation of sections 1 and 2 of article II and section 22 of article IV of the Illinois constitution, and section 1 of the fourteenth amendment of the Federal constitution, and permanently enjoining defendant from enforcing the void statute against plaintiffs, was in accordance with law and is affirmed.

*Judgment affirmed.*