NATIONAL PAINT & COATINGS ASSO-CIATION; Rust–Oleum Corporation, an Illinois corporation; The Sherwin–Williams Company, an Ohio corporation; Ace Hardware Corporation, a Delaware corporation; Tru–Test Manufacturing Company, a Delaware corporation; FMA, Inc., d/b/a Jim's Ace Hardware, an Illinois corporation; W.C. Schauer Hardware Center, Inc., an Illinois corporation; Elston Ace Hardware, Inc., an Illinois corporation; Smiley Ace Hardware, Inc., an Illinois corporation; The Art & Craft Materials Institute, Inc., a New York corporation; Brudno Art Supply Store Co., Inc., a Delaware corporation; Sakura Color Products of America, Inc., a California corporation; Peter Michael O'Brien, an individual; and Kirby J. Briske, an individual, Plaintiffs,

v.

CITY OF CHICAGO, an Illinois municipal corporation, Defendant.

No. 92 C 4023.

United States District Court, N.D. Illinois, E.D.

July 31, 1992.

Harvey M. Sheldon, Bruce H. Weitzman, Paul Andre Katz, Edward C. Stewart, McDermott, Will & Emery, P.C., Chicago, Ill., for plaintiffs.

Thomas G. Dent, Jeryl Dezelick, Peter C. Woodford, Therese G. Pinter, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiff Sherwin–Williams Co.

Gail A. Niemann, Susan R. Lichtenstein, Anita K. Modak–Truran, City of Chicago, Law Dept. Corp. Counsel, Ronald D. Jolly, Governor's Office of Consumer Services, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In an effort to combat the growing problem of graffiti, on May 20, 1990, the City Council of the City of Chicago enacted four ordinances, Municipal Code §§ 4–132–150, 8–4–130, 8–16–095 and 8–16–096, regulating the sale and possession of paint in spray cans ("spray paint") and markers containing a non-water soluble fluid and having a writing surface of ⅜ of an inch or greater ("large markers"). Sections 4–132–150 and 8–4–130(a) are the subjects of the instant suit for declaratory and injunctive relief.[1] Plaintiffs, who consist of manufacturers, transporters, retail sellers and consumers of spray paint and large markers, contend that the ordinances are facially unconstitutional,[2] in that they: (1) undu-

---

1. Although § 8–4–130 consists of two subsections, plaintiffs do not challenge the constitutionality of § 8–4–130(b), which prohibits the possession of spray paint and large markers "on the public way with the intent to use the same to deface any building, structure or property." *See* Complaint ¶ 3, at 3. Likewise, plaintiffs do not challenge the validity of § 8–16–095, which prohibits minors from possessing spray paint and large markers, nor do they challenge § 8–16–096, which prohibits aiding and abetting minors in obtaining possession of such items. *Id.*

2. Likewise, plaintiffs contend that the ordinances are unconstitutional *as applied* to retail sellers, manufacturers, users and consumers of

ly interfere with interstate commerce in violation of the United States Constitution; (2) constitute an impermissible use of the police power of the City of Chicago under the Illinois Constitution; (3) deny plaintiffs their rights to equal protection of the laws as guaranteed by the Illinois and United States Constitutions; (4) deny plaintiffs their rights to procedural and substantive due process as guaranteed under the Illinois and United States Constitutions; and (5) violate the protections of due process by being vague and overbroad. Presently before the court is defendant City of Chicago's motion to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

### I. Motion to Dismiss Standard

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*).

### II. Background

#### A. *The Challenged Ordinances*

Section 4–132–150 of the Municipal Code prohibits the retail sale of spray paint and large markers in the City of Chicago. That provision provides:

> It shall be unlawful for any person holding a retail business license to sell paint in spray cans to any person or to sell any marker containing a fluid which is not water soluble and has a point, brush, applicator or other writing surface of three-eighths of an inch or greater to any person.

Municipal Code of Chicago, § 4–132–150. "Any person found in violation of Section 4–132–150 shall be fined not less than nor more than $100.00 and/or required to perform reasonable public service for each separate offense." *Id.* § 4–132–170.

Section 8–4–130(a) prohibits the possession of spray paint and large markers in Chicago's public buildings, public facilities or on the property of another:

> (a) It shall be unlawful for any person to possess a spray paint container, liquid paint or any marker containing a fluid which is not water soluble and has a point, brush, applicator or other writing surface of three-eighths of an inch or greater, on the property of another or in any public building or upon any public facility. It shall be a defense to an action for violation of this subsection that the owner, manager or other person having control of the property, building or facility consented to the presence of the paint or marker.

Municipal Code of Chicago, § 8–4–130(a). The penalty for violating this provision is a fine not to exceed $200. *Id.* § 8–4–360.

#### B. *The Plaintiffs*

● National Paint Coatings Association ("NPCA") is a voluntary, non-profit industry association that represents many of the nation's paint manufacturers. Its members accounting for approximately one-half of the spray paint manufactured and marketed in the United States, NPCA brings this action in its own name and on behalf of its members.

● Rust-Oleum Corporation ("Rust–Oleum") is an Illinois corporation having its principal offices in Vernon Hills, Illinois. Rust–Oleum manufactures and sells spray paint in Chicago and elsewhere in interstate commerce.

---

spray paint and large markers. These graffiti ordinances, however, have not been applied to plaintiffs (nor any other person) and, as such, leave plaintiffs with only a facial attack upon their validity.

● The Sherwin–Williams Company ("Sherwin–Williams") is an entity incorporated under the laws of Ohio, and licensed to conduct business in Illinois. Sherwin–Williams manufactures spray paint at facilities located in Chicago, selling such paint in wholly-owned retail stores in Chicago and elsewhere.

● Ace Hardware Corporation, a Delaware corporation, maintains its offices for its Paint Division in Matteson, Illinois, and conducts business in Chicago as licensed retail sellers of spray paint.

● Tru-Test Manufacturing Company ("Tru–Test"), likewise incorporated under the laws of Delaware, maintains its principal offices in Cary, Illinois. Tru–Test manufactures spray paint, and is affiliated with "cooperative members" who transact business in Chicago as licensed retail sellers of spray paint.

● The following plaintiffs, all of which are Illinois corporations operating as licensed retailers in Chicago, sell spray paint amongst their product lines: FMA Inc., d/b/a Jim's Ace Hardware; W.C. Schauer Hardware Center, Inc.; Elston Ace Hardware, Inc.; and Smiley Ace Hardware, Inc.

● The Art & Craft Materials Institute ("ACMI") is a New York corporation, having its principal offices in Boston, Massachusetts. ACMI, an international membership association organized in 1936, brings suit in its own name and on behalf of its members, who include manufacturers of large markers.

● Brudno Art Supply Store Co., a Delaware corporation, operates as a licensed retailer in Chicago, and sells amongst its product line spray paint and large markers.

● Sakura Color Products of America, Inc. ("Sakura"), a California corporation, manufactures large markers, and sells them to retail sellers in Chicago.

● Peter Michael O'Brien is an individual working as a manufacturers' representative of artists' supplies in Illinois. One of the products he sells to retail stores in Chicago is large markers manufactured by Sakura.

● Kirby J. Briske is an individual who resides and works as an artist in Chicago. He buys and uses spray paint for his works of art on paper.

### III. Discussion

■ At the threshold, a word about the role of the court in reviewing state regulations is in order. As a federal court it is our duty to review state laws and regulations for constitutional infirmities; to the extent that the state law or regulation in question conflicts with the dictates of the United States Constitution, the former must yield to the latter. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). This role, however, is limited. Certainly, the Constitution does not compel the City of Chicago to subscribe to any particular means of combating the problem of graffiti. As such, this court will not " 'second-guess the empirical judgments of lawmakers concerning the utility of legislation....' " *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 92, 107 S.Ct. 1637, 1651, 95 L.Ed.2d 67 (1987) (quoting *Kassel v. Consolidated Freightways Corp.,* 450 U.S. 662, 679, 101 S.Ct. 1309, 1320, 67 L.Ed.2d 580 (1981) (Brennan, J., concurring)).

#### A. *Standing and Ripeness*

The City initially asserts that plaintiffs lack standing to challenge § 8–4–130(a), regulating possession of spray paint and large markers, as they have not set forth facts indicating a "distinct and palpable" injury, as opposed to an abstract, hypothetical or conjectural injury. Additionally, the City maintains that plaintiffs' challenge to the possession ordinance is not ripe for review. We disagree with both contentions.

■ The doctrine of standing "is grounded both on constitutional and prudential considerations, with the division between the two often a blurry one." *Government Suppliers Consolidating Serv. v. Bayh,* 734 F.Supp. 853, 857 (S.D.Ind.1990). The City confines its attack on plaintiffs' standing to the requirements of the Constitution and, finding no prudential concerns warranting a denial of standing, we proceed to

the requirements of Article III of the United States Constitution. Article III restricts the jurisdiction of federal courts to "cases or controversies." U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution . . .—to Controversies between. . . ."). To meet this constitutional requirement plaintiffs must show that (1) they have suffered an actual or threatened injury, (2) fairly traceable to the challenged conduct, and (3) for which the court can provide a remedy. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Simmons v. Interstate Commerce Comm'n*, 900 F.2d 1023, 1026 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1308, 113 L.Ed.2d 242 (1991); *City of Evanston v. Regional Transp. Authority,* 825 F.2d 1121, 1123 (7th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649. (1988).

▪ Respecting the first prong of the *Valley Forge* test—the only prong in dispute—plaintiffs have alleged that those

> who for business or personal purposes need to use spray paint or large markers . . . [will] have no means under [§ 8-4-130(a)] to travel with those materials in Chicago, because public facilities or public places are almost always involved and ordinary transit through building lobbies and other private places, without the permission of the owners or managers, is a crime under the ordinance.

Complaint ¶ 48, at 12. The fear of prosecution under § 8-4-130(a) of those plaintiffs who anticipate possessing, without consent, spray paint and large markers in Chicago's public buildings, public facilities or on the property of another is a sufficient threatened injury to meet the "injury in fact" requirement of *Valley Forge. See Kucharek v. Hanaway,* 902 F.2d 513, 516 (7th Cir.1990) (plaintiffs had standing to challenge new obscenity statute based on a showing that they "want to sell materials which the statute actually or arguably prohibits and that they are deterred from doing so by a reasonable fear of prosecu-

tion"), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Further, it is reasonable to conclude that such fear of prosecution will result in financial losses to those plaintiffs who sell such items, as consumers change their consumption patterns to avoid prosecution under the possession ordinance. Such an economic injury is precisely the type that is consistently found to satisfy the constitutional injury in fact requirement. *See Government Suppliers Consolidating Serv.,* 734 F.Supp. at 859 (collecting cases).

▪ In a declaratory judgment action, the issue of ripeness focuses on the following question: " '[W]hether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). The gravamen of the City's ripeness argument is that the ordinance has yet to be enforced in Chicago and, as such, may not apply to plaintiffs' conduct. Additionally, the City noted that to the extent that the ordinance is applied to plaintiffs, the maximum penalty is a fine of $200—a penalty the City characterizes as "slight." Plaintiffs, however, do not object to the application of this particular provision. Rather, they contend that the regulation is unconstitutional on its face. Under these circumstances, we find plaintiffs' challenge to § 8-4-130(a) ripe for adjudication. *See Kerr-McGee Chemical Corp. v. City of West Chicago,* 914 F.2d 820, 823-24 (7th Cir.1990) (characterizing plaintiff's facial attack on City Code as an entirely legal question, and concluding that it was ripe for review) (citing *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). We now turn to the merits of plaintiffs' complaint.

### B. *Commerce Clause*

▪ In Count I of their complaint, plaintiffs contend that § 4-132-150 and § 8-4-

130(a) violate the commerce clause of the United States Constitution, which empowers Congress "to regulate Commerce ... among the several States...." U.S. Const. art. 1, § 8, cl. 3. It is settled law that the "negative" or "dormant" component of the commerce clause prevents states and local governing bodies from impeding the flow of interstate commerce, even absent congressional action in a particular field.[3] *See Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* —— U.S. ——, ——, 112 S.Ct. 2019, 2023, 119 L.Ed.2d 139 (1992); *Raymond Motor Transp. v. Rice,* 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664 (1978); *Bowman v. Niagara Mach. and Tool Works, Inc.,* 832 F.2d 1052, 1055 (7th Cir.1987). The limitation on state regulatory action, however, "is by no means absolute." *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). Rather, local governing bodies "retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Id.; see also Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986).

■ In determining whether a state or local governing body has overstepped its role in regulating interstate commerce, the initial inquiry delves into the discriminatory nature of the challenged regulation. If the legislation discriminates against interstate commerce "either on its face or in practical effect," the local governing body bears the burden of demonstrating that the regulation "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means. *Fort Gratiot Sanitary Landfill, Inc.,* —— U.S. at ——, 112 S.Ct. at 2024; *Maine v. Taylor,* 477 U.S. at 138, 106 S.Ct. at 2447; *Sporhase v. Nebraska,* 458 U.S. 941, 957, 102 S.Ct. 3456, 3464, 73 L.Ed.2d 1254 (1982); *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979); *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977); *Dean Milk Co. v. City of Madison,* 340 U.S. 349, 354, 71 S.Ct. 295, 297–98, 95 L.Ed. 329 (1951). If, on the other hand, the legislation "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).[4]

■ There is no doubt that §§ 4–132–150 and 8–4–130(a) are not protectionist measures; rather, they apply evenhandedly between intra- and inter-state commerce. Indeed, both the City and the plaintiffs agree that the *Pike* balancing test is applicable to the instant challenge to the anti-graffiti regulations. As such, we begin

---

**3.** We note that Congress may authorize the states to engage in regulation that otherwise would be prohibited by the commerce clause. *See South–Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 91, 104 S.Ct. 2237, 2242, 81 L.Ed.2d 71 (1984). In this case, however, the City does not assert that the anti-graffiti ordinances stem from such congressional authorization. Rather, the City contends that the challenged ordinances were enacted pursuant to the local government's police power to regulate matters of legitimate local concern.

**4.** We note that the Seventh Circuit in *Amanda Acquisition Corp. v. Universal Foods Corp.,* 877 F.2d 496, 505–07 (7th Cir.), *cert. denied,* 493 U.S. 955, 110 S.Ct. 367, 107 L.Ed.2d 353 (1989), questioned the validity of the *Pike* balancing test in light of the Supreme Court's decision in *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). *CTS* involved an Indiana statute prohibiting acquirors from securing voting rights in Indiana target corporations unless target management or unaffiliated shareholders approved. The Supreme Court in *CTS* upheld the statute without any citation to *Pike,* instead testing the statute against the "firmly established" principle of "a State's authority to regulate domestic corporations." *CTS,* 481 U.S. at 89, 107 S.Ct. at 1649. The validity of the *Pike* test, however, has since been re-affirmed by the Supreme Court, noting in *Chemical Waste Management, Inc. v. Hunt,* —— U.S. ——, —— n. 5, 112 S.Ct. 2009, 2014 n. 5, 119 L.Ed.2d 121 (1992), that the lesser scrutiny afforded under the *Pike* test is available "where other legislative objectives are credibly advanced *and* there is *no* patent discrimination against interstate trade." In any event, no party in the instant action disputes the validity of the *Pike* test.

our analysis with the first *Pike* consideration: does the local legislation serve a legitimate local public interest? Sections 4–132–150 and 8–4–130(a) are directed at the same interest, namely preserving property values, deterring illegal activity and protecting the aesthetic character of the City's neighborhoods from the devastation of graffiti vandalism. *See* Municipal Code of Chicago, §§ 4–132–150 & 8–4–130, Preamble. Clearly, these are the types of local interests that are legitimate subjects for local regulation, and plaintiffs do not suggest otherwise. Second, as the legislation on its face addresses only matters of local concern, *i.e.*, sale and possession of spray paint and large markers within Chicago, any impact on interstate commerce is only "incidental." *See Camille Corp. v. Phares*, 705 F.2d 223, 229 (7th Cir.1983) (city's ordinance banning the sale of drug paraphernalia "is concerned only with local activity; therefore any impact on interstate commerce is only incidental").

Contrary to the City's suggestion, however, our analysis does not end here. Having met the first two *Pike* elements, this court will uphold the ordinances only if the burden on interstate commerce is not excessive in relation to the local benefits. This question parts from the legislative purposes as espoused, instead focusing on the extent of the burdens imposed by, and the benefits derived from, the ordinances. It is an empirical question—"one of degree." *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. Plaintiffs contend that the ordinances' ban on the sale and possession of spray paint and large markers presents substantial economic and recreational burden. Complaint ¶¶ 28–39, at 8–11. Further, they assert that the means employed by the ordinances will not achieve, or move the City closer to achieving, the stated local objectives of preserving property values, deterring illegal activity and protecting the aesthetic character of the City's neighborhoods from the devastation of graffiti vandalism. *Id.* ¶ 51, at 13. Finally, plaintiffs point to education, prompt correction, law enforcement and other programs such as annual "community paint out" campaigns as reasonable alternatives for addressing Chicago's graffiti problem without burdening interstate commerce. *Id.* ¶¶ 52–53, at 13. In light of these allegations, and despite the City's assertion of a "strong public interest," plaintiffs must be afforded the opportunity to garner and present facts substantiating their claims. *See Raymond Motor*, 434 U.S. at 447 n. 25, 98 S.Ct. at 797 n. 25 (citing Dowling, *Interstate Commerce and State Power*, 27 Va.L.Rev. 1, 27–28 (1940)); *see also id.* at 796, 98 S.Ct. at 796 ("the State's assertion that the challenged regulations contribute to highway safety is rebutted by appellants' evidence...."). Until they have been given this opportunity, this court cannot engage in the balancing required under *Pike*, and the City's motion to dismiss Count I of plaintiffs' complaint is denied.

### C. *The City's Police Power*

Article VII, § 6(a) of the Illinois Constitution authorizes local governments, such as the City of Chicago, to function as home rule units to "exercise any power and perform any function pertaining to its government and affairs." Pursuant its police power, the City may " 'restrict or prohibit the exercise of a legitimate trade where it is necessary for the protection of the public health, morals, safety or welfare.' " *Opyt's Amoco, Inc. v. The Village of South Holland*, 149 Ill.2d 265, 269, 172 Ill.Dec. 390, 392, 595 N.E.2d 1060, 1062 (1992) (quoting *Figura v. Cummins*, 4 Ill.2d 44, 122 N.E.2d 162 (1954)). To constitute a legitimate exercise of the police power, municipal regulation "must bear a reasonable relationship to the public interest sought to be protected and the means adopted must be a reasonable method of accomplishing the chosen objective." *Id.* (citing *Crocker v. Finley*, 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346 (1984)); *see also Finish Line Express, Inc. v. City of Chicago*, 72 Ill.2d 131, 138, 19 Ill.Dec. 626, 628, 379 N.E.2d 290, 292 (1978); *Midwest Petroleum Marketers v. City of Chicago*, 82 Ill.App.3d 494, 500, 37 Ill.Dec. 707, 712, 402 N.E.2d 709, 714 (1st Dist.1980). Once the legislative body determines that a problem exists and acts to protect and promote the general welfare of its citizens, the leg-

islation is presumed to be a valid exercise of the City's police power. *Opyt's Amoco,* 149 Ill.2d at 269, 172 Ill.Dec. at 392, 595 N.E.2d at 1062; *Midwest Petroleum Marketers,* 82 Ill.App.3d at 500, 37 Ill.Dec. at 712, 402 N.E.2d at 714 (citing *Union Cemetery Ass'n v. Cooper,* 414 Ill. 23, 110 N.E.2d 239 (1953)). The mere fact that the legislature has invoked the police power, however, is not conclusive that the power was lawfully exercised; it remains within the province of the court to determine that issue. *Opyt's Amoco,* 149 Ill.2d at 269, 172 Ill.Dec. at 392, 595 N.E.2d at 1062 (citing *Figura,* 4 Ill.2d at 49, 122 N.E.2d at 165).

■ As stated *supra* subsection III(B), both §§ 4–132–150 and 8–4–130(a) are directed at promoting legitimate governmental interests, namely preserving property values, deterring illegal activity and protecting the aesthetic character of the City's neighborhoods from the devastation of graffiti vandalism. The controverted issue in this case concerns the means adopted to achieve these goals. Plaintiffs' complaint contains allegations that: (1) the ban on retail sales and on public possession of spray paint and large markers will not eliminate the availability of such items to individuals who have commonly used them to deface buildings, Complaint ¶ 68, at 16–17; (2) the prohibition of the retail sale of spray paint and large markers unreasonably interferes with and curtails innocent business relationships out of all proportion to any demonstrable reduction in defacement of buildings, *id.* ¶ 69, at 17; (3) the ban on public possession of spray paint and large markers, without proper consent, will unreasonably interfere in the ability of people to carry out ordinary lawful occupations and tasks, and will not prevent individuals who intend to deface buildings from using other means to do so, *id.* ¶¶ 70–71, at 17; (4) the ban on public possession of spray paint and large markers, without proper consent, will not prevent individuals from defacing property because of the inherent difficulties associated with the enforcement of the ban, *id.* ¶ 72, at 17; and (5) the ordinances are unduly oppressive and arbitrarily imposing restrictions on manufacturers, retailers and consumers of spray paint and large markers. *Id.* ¶ 73, at 18. Plaintiffs have sufficiently alleged that the means adopted by the ordinance are arbitrary, capricious and unreasonable and, as such, must be given the opportunity to substantiate their claims. Accordingly, we deny the City's motion to dismiss Count II of plaintiffs' complaint.

### D. *Equal Protection*

■ The Fourteenth Amendment forbids state governing bodies from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Because §§ 4–132–150 and 8–4–130 do not deprive plaintiffs of a fundamental right or classify along suspect lines, *i.e.,* race or religion, the ordinances must be upheld if the disputed classifications are "rationally related" to a legitimate end. *See Burlington N. R.R. Co. v. Ford,* —— U.S. ——, ——, 112 S.Ct. 2184, 2186, 119 L.Ed.2d 432 (1992); *United States v. Sperry Corp.,* 493 U.S. 52, 64, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989); *Vaden v. Village of Maywood,* 809 F.2d 361, 365 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). The "rational relationship" test is not exacting: state governing bodies "are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam).

■ Plaintiffs, citing *Cabell v. Chavez–Salido,* 454 U.S. 432, 440, 102 S.Ct. 735, 740, 70 L.Ed.2d 677 (1982), argue that the ordinances classifications are sufficiently under- and over-inclusive to "undercut the governmental claim that the classification serves legitimate political ends." Plaintiffs claim § 4–132–150 is under-inclusive because it applies only to persons holding a retail business license, but not wholesalers, mail-order businesses, causal sellers or suburban retailers of spray paint and large markers. Complaint ¶¶ 77–78, at 18–19. Likewise, plaintiffs assert that both ordinances are under-inclusive in that they do

not apply to other items that might be used for graffiti vandalism. *Id.* ¶ 79, at 19. These classifications, however, do not afford plaintiffs with an equal protection challenge. There is no doubt that the City perceived a legitimate problem in need of redress. And, regardless of whether these ordinances are reasonable means to achieve the City's goals—an issue yet to be resolved—we do not believe the equal protection clause mandates the City to tackle the problem in its entirety or not at all. As stated in *Vaden*, 809 F.2d at 365 (quoting *Williamson v. Lee Optical Co. of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1954)): " '[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to legislative mind.' " *See also Bowen v. Owens*, 476 U.S. 340, 347, 106 S.Ct. 1881, 1886, 90 L.Ed.2d 316 (1986); *Illinois Health Care Ass'n v. Illinois Dep't of Public Health*, 879 F.2d 286, 290–91 (7th Cir.1989).

Equally unavailing is plaintiffs' assertion that the ordinances are over-inclusive in that they apply to all persons regardless of age and regardless of their intended use of spray paint and large markers. *See* Complaint ¶ 80, at 19. Under the minimal standards of the rational basis test, we find the ordinances' inclusion of all age groups rationally related to the legislation's stated objectives. Apart from the reasonable assumption that adults partake in vandalism, that adults may buy and possess spray paint and large markers for the benefit of youths who ultimately engage in graffiti is a reasonable basis to prohibit the sale and possession of these items for all age groups. More troubling is the fact that § 8–4–130(a), addressing possession in public buildings and facilities or on private property, applies irrespective of intended use, while application of § 8–4–130(b), addressing possession on the public way, depends on the intention of the actor. Nonetheless, the City has articulated the basis for this distinction as follows. A person who wishes to possess spray paint or large markers in public buildings and facilities or on private property can obtain the permission of the owner, manager or other person

having control of the premises. Indeed, obtaining such consent is set forth as a defense to an action for violation of § 8–4–130(a). A person who desires to possess spray paint or large markers on the public way, however, cannot easily obtain such consent. Therefore, as a safeguard against unwarranted application, § 8–4–130(b) prohibits the possession of spray paint and large markers on the public way only if a person intends to deface property. While optimal protection against unwarranted application may dictate the inclusion of an intention provision in each ordinance, that is a decision for the legislature and not this court. For the purposes of our inquiry, the constitutionality of the regulations, we find the disparate treatment of the intention requirement in the respective ordinances rationally related to the legitimate goals of the legislation. Accordingly, we dismiss Count III of plaintiffs' complaint.

### E. *Procedural Due Process*

The Fourteenth Amendment prohibits a state from depriving persons of life, liberty or property without due process of law. In order to ascertain whether state action affecting an individual is violative of this prohibition, two inquiries are made: first, a life, liberty or property interest must be identified; and second, the degree of process due to the individual must be ascertained. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir.1982); *Mustfov v. Rice*, 663 F.Supp. 1255, 1265 (N.D.Ill. 1987). Assuming for the purposes of this motion that plaintiffs have adequately alleged a protected property right, a point the City does not contest, plaintiffs nonetheless have failed to state a procedural due process claim.

The gravamen of plaintiffs' procedural due process claim is that their fundamental right to engage in lawful, useful and harmless trade has been denied without prior notice and an opportunity for a hearing before the City Council. *See* Complaint ¶ 86, at 20. It is well established, however, that statutes or ordinances of general applicability may condition or even

prohibit the right to conduct a business without running afoul of procedural due process. *Vaden v. Village of Maywood,* 809 F.2d 361, 365 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987); *Mustfov,* 663 F.Supp. at 1265. As the Supreme Court stated in *Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915):

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the *person* or *property* of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

Finding the adoption of §§ 4–132–150 and 8–4–130 the type of legislative decision for which no individual hearing was necessary, we conclude that the guarantee of procedural due process does not afford plaintiffs the vehicle to challenge the constitutionality of these ordinances.[5] *See Atkins v. Parker,* 472 U.S. 115, 130–31, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985); *Carson v. Block,* 790 F.2d 562, 566 (7th Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986); *Mustfov,* 663 F.Supp. at 1265.

### F. *Substantive Due Process*

In response to plaintiffs' assertion of a substantive due process violation, *see* Complaint ¶¶ 87–88, at 21, the City argues that the oxymoron that is "substantive due process" should be limited to protection of privacy rights and certain other limited personal rights. Indeed, the Seventh Circuit has recently called into question the practice of reviewing state regulations under the guise of the due process clause. *See Saukstelis v. City of Chicago,* 932 F.2d 1171, 1173 (7th Cir.1991) ("Out side the realm of personal liberties, substantive due process may be a misnomer for the enforcement of rights expressly established in the Constitution and applied to the states through the fourteenth amendment."); *Schroeder v. City of Chicago,* 927 F.2d 957, 961 (7th Cir.1991) ("We do not consider [substantive due process] a blanket protection against unjustifiable interferences with property."). Nonetheless, neither the Seventh Circuit nor the Supreme Court has "completely extinguished" the doctrine of substantive due process. *See Schroeder,* 927 F.2d at 961 (conceding that substantive due process has been "saved from total formlessness without being completely extinguished"); *see also Swartz v. Scruton,* 964 F.2d 607, 609 (7th Cir.1992) ("A substantive due process claim can be brought in the context of property interests."). Until that moment, this court will continue to test state economic regulation against the standards of substantive due process.

■■■ State ordinances can be said to deny substantive due process only if they do not bear a rational relationship to a legitimate governmental interest. *Williamson v. Lee Optical Co. of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *Nebbia v. New York,* 291 U.S. 502, 524–25, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 467 (7th Cir.1988); *Vaden v. Village of Maywood,* 809 F.2d 361, 364 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987); *Waste Management of*

---

**5.** Underlying our conclusion that the legislative mechanism provides all the process due is the assumption that the ordinances were "enacted in accordance with the procedures established in the state constitution and statutes for the enactment of legislation." *Richardson v. Town of Eastover,* 922 F.2d 1152, 1158 (4th Cir.1991). Plaintiffs have alleged that "the rules of the City Council were not adhered to in the adoption of the ordinance[s]." Complaint ¶ 86, at 20. However, neither plaintiffs' complaint nor any of their pleadings specifies which, if any, rules were violated. Nor do plaintiffs set forth any of the facts which purportedly form the basis of such a violation. With nothing more than the conclusory statement quoted above, plaintiffs' procedural due process claim cannot stand.

*Illinois, Inc. v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 1989 WL 56917, at *2–3 (N.D.Ill. May 23, 1989). This test involves the same inquiry as that set forth *supra* subsection III(C) and, for the reasons stated therein, we deny the City's motion to dismiss plaintiffs' substantive due process claim.

### G. *Overbreadth*

In Count V of their complaint, plaintiffs maintain that the ordinances are facially overbroad, and thus violate due process, as their prohibitions extend well beyond the evil at which they are addressed. Complaint ¶ 89, at 21. In order to prevail on their overbreadth challenge, plaintiffs must demonstrate that the ordinances reach a "substantial" amount of constitutionally protected conduct. *Massachusetts v. Oakes,* 491 U.S. 576, 581, 109 S.Ct. 2633, 2637, 105 L.Ed.2d 493 (1989); *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 13, 108 S.Ct. 2225, 2234, 101 L.Ed.2d 1 (1988); *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *United States v. Rodgers,* 755 F.2d 533, 542 (7th Cir.), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). Although acknowledging that the concept of "substantial overbreadth" is not readily reduced to an exact definition, the Supreme Court has made it clear that legislation cannot be facially invalidated as overbroad simply because some constitutionally impermissible applications of the law are conceivable. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Moreover, the overbreadth doctrine should be invoked "only as a last resort," and even legislation that appears overbroad should not be struck down if it is subject to a reasonable limiting construction. *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916.

Contrary to plaintiffs' suggestion, the overbreadth doctrine applies only to expression protected under the First Amendment, working to relax the standing requirements by permitting parties to raise the rights of those not before the court. *Mustfov v. Rice,* 663 F.Supp. 1255, 1273 (N.D.Ill.1987); *see also Oakes,* 491 U.S. at 581, 109 S.Ct. at 2637 (referring to the overbreadth doctrine as "[t]he First Amendment doctrine"). There is no doubt that the ordinances in question will reach a substantial amount of legitimate commercial activity. However, while relevant to the above discussed commerce challenge, police power claim and substantive due process analysis, the amount of legitimate commerce curtailed does not involve the First Amendment and, as such, is irrelevant to the instant overbreadth inquiry. The only legitimate assertion of First Amendment conduct potentially reached by §§ 4–132–150 and 8–4–130 involves those artists who use spray paint and large markers for art work.[6] Surely, as plaintiffs allege, it is conceivable that the ban on the sale and possession of spray paint and large markers may prevent some artists from conveying their particular messages via their art work. However, when compared to the ordinances' potential applications to unprotected conduct, this conceivable infringement upon First Amendment rights cannot be considered "substantial." Consequently, we dismiss Count V of plaintiffs' complaint.

### H. *Vagueness*

An ordinance may be facially attacked as a violation of the due process clause under the void-for-vagueness doctrine. " 'To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications.' " *Brockert v. Skornicka,* 711 F.2d 1376, 1381 (7th Cir.1983) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982)). There are two distinct problems presented by vague legislation. First, a vague law does

---

**6.** We note that plaintiffs do not argue that graffiti is a form of expressive conduct protected by the First Amendment.

not give an individual of ordinary intelligence a reasonable opportunity to comply with the law. In effect, there is no notice of what the law requires. *Brockert*, 711 F.2d at 1381. Second, a vague law lacks explicit standards for its application, and thus "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972)).

 Because fair notice and fair enforcement are more important in some areas than in others, the application of the void-for-vagueness doctrine varies with the nature of the enactment:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is prescribed.... Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Village of Hoffman Estates*, 455 U.S. at 498–99, 102 S.Ct. at 1193–94 (citations omitted). Although conceding that the ordinances are "quasi-criminal" in nature, City of Chicago's Reply Memorandum at 13 n. 3, the City nonetheless argues that the ordinances are economic regulations and, as such, should be tested against the least restrictive standard of review. We agree that the ordinances in question are economic in nature. However, the fact that neither of the challenged provisions contain a scienter requirement, coupled with their prohibitory and stigmatizing effect, warrants the relatively strict test traditionally applied to quasi-criminal and criminal laws. *See id.* at 499–500, 102 S.Ct. at 1194. Nevertheless, even under the test appropriate to either a quasi-criminal or criminal law, plaintiffs' facial challenge cannot stand as the ordinances are sufficiently clear.

 In support of their lack-of-notice allegation, plaintiffs argue that the ordinances do not define the terms "public way," "possession," "public building," "public facility," and "consent." Complaint ¶ 96, at 22–23. None of these terms, however, are "terms of art"; each has a meaning that is readily understandable to a person of ordinary intelligence. The term "public way" does not appear in § 4–132–150 or § 8–4–130(a) and, to the extent that plaintiffs sought to challenge its meaning as it appears in § 8–4–130(b), it is defined in the Municipal Code as "any sidewalk, street, alley, highway, or other public thoroughfare." Municipal Code of Chicago, § 1–4–090(f). A principal meaning of the term "possession" is "the act or condition of having in or taking into one's control or holding at one's disposal." Webster's New International Dictionary of the English Language 1770 (3d ed. 1976). "Public building" has been defined as "[a]ny building held, used, or controlled exclusively for public purposes by any department or branch of government, state, county, or municipal, without reference to the ownership of the building or of the reality upon which it is situated." Black's Law Dictionary 1228 (6th ed. 1990). A "facility" is generally defined as "something that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end." Webster's New International Dictionary of the English Language 812–13 (3d ed. 1976).

Thus, a "public facility" can fairly be described as such a structure "held, used, or controlled exclusively for public purposes by any department or branch of government, state, county, or municipal, without reference [its] ownership ... or of [the ownership of] the reality upon which it is situated." Finally, "consent" is ordinarily understood to mean "to express a willingness (as to accept a proposition or carry out a particular action): give assent or approval: agree." *Id.* at 482.

More significant to plaintiffs' vagueness claim is the prospect that the ordinances provide insufficient standards for enforcement. The ordinances in question, however, like that reviewed in *Village of Hoffman Estates*, 455 U.S. at 503, 102 S.Ct. at 1196, have yet to be enforced. As such, plaintiffs have not, and could not, allege any specific instances of discriminatory or unfair enforcement. Under these circumstances, we are confined to the language in the ordinances, and we find that such language is "sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance[s] void for vagueness." *Id.* (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168–71, 92 S.Ct. 839, 846–48, 31 L.Ed.2d 110 (1972); *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)).

Although alternate constitutional grounds are available for plaintiffs to challenge these ordinances, the void-for-vagueness doctrine is not one of them, and Count VI of plaintiffs' complaint is dismissed.

### IV. Conclusion

In summary, and in order of our discussion above, we have taken the following actions. (1) We find that plaintiffs possess standing to contest the validity of § 8–4–130(a), and that such challenge is ripe for adjudication. (2) The City's motion to dismiss Count I (commerce clause challenge) of plaintiffs' complaint is denied as plaintiffs must be afforded the opportunity to garner and present facts with respect to the *Pike* balancing test. (3) We deny the City's motion to dismiss Count II (challenge to police power) of plaintiffs' complaint because plaintiffs have sufficiently alleged that the means adopted by the ordinance are arbitrary, capricious and unreasonable. (4) Finding the disparate classifications of the respective ordinances rationally related to the legitimate goals of the legislation, we dismiss Count III (equal protection challenge) of plaintiffs' complaint. (5) Because the adoption of §§ 4–132–150 and 8–4–130 constitute the type of legislative decision for which no individual hearing was necessary, we grant the City's motion to dismiss plaintiffs' procedural due process claim. (6) Reaffirming the notion that a substantive due process claim can be brought in the context of property interests, the City's motion to dismiss plaintiffs' substantive due process claim is denied. (7) Having failed to allege a "substantial" amount of constitutionally protected expression reached by the ordinances, we dismiss Count V (overbreadth challenge) of plaintiffs' complaint. (8) Finding the language of the ordinances sufficiently clear, we dismiss Count VI (vagueness challenge) of plaintiffs' complaint. (9) Finally, a status hearing in open court is set for August 25, 1992, at 10:00 a.m. It is so ordered.